■     In the Matter of UNITED HELLENES, INC., Doing Business as SYMPOSIUM RESTAURANT, Petitioner, v. BERTRAM D. SARAFAN et al., Constituting the New York State Liquor Authority, Respondents.— Determination of the State Liquor Authority dated February 4, 1974 canceling the petitioner's restaurant liquor license modified, on the law, to the extent of annulling such cancellation and substituting therefor a provision suspending the license for the remainder of the license period, and as so modified the determination is confirmed, without costs and without disbursements.  The finding that petitioner permitted " one Dmitri Kotsonas, a person not mentioned in [the] license to avail himself of the license issued to the licensee ", was supported by substantial evidence, which included certain corporate bank records, tax forms filed by the licensee, correspondence signed by Kotsonas, as well as various admissions made by both Kotsonas and Posnakoff during the course of the investigators' visits to the premises and in the subsequent interviews.  However, there was no showing that the arrangement was intended for the purpose of concealing any involvement by unsavory persons in the business, or that Kotsonas was operating the restaurant through the licensee as a blind.  Rather, it appears that there was confusion concerning Kotsonas' immigration status which accordingly, created doubt as to his legal relationship and interest in the premises.  And, when those questions were resolved, petitioner, even prior to the institution of the subject charges, filed a new application seeking approval of a corporate change listing Kotsonas as a stockholder.  In light of all the circumstances we therefore conclude that the punishment imposed was excessive.  Concur — Murphy, Lupiano, Tilzer and Lane, JJ.; Nunez, J. P., dissents in part in the following memorandum: I would annul the determination of the Liquor Authority outright.  The findings that (1) the licensee permitted one Dmitri Kotsonas, a person not mentioned in the license, to avail himself of the license and (2) the licensee failed to keep on the licensed premises adequate books and records, are not supported

by the record. The sole proof offered was testimony by a Mr. Torres, an investigator on respondents' staff who visited the premises twice covertly and a third time disclosing his identity. His testimony clearly shows that the licensee and Kotsonas fully co-operated with the authority in disclosing all the facts concerning the operation of the licensed premises. The record discloses the operation of a decent, orderly, small neighborhood restaurant by the licensee, Mr. Yanni Posnakoff, with the help of his hard working and devoted friend Kotsonas. The licensee frankly testified that he always had intended to make Kotsonas his partner but for good stated reasons he had been unable to do so when he first obtained his license. Posnakoff's testimony is most refreshing. He co-operated fully with Torres — submitted all his books and records which were found to be in perfect order. He testified unequivocally that Kotsonas was not his partner. The finding that he was is based on circumstantial and hearsay evidence. Concededly the licensee's record since his original license was issued several years ago is otherwise unblemished. To me the action of the authority in canceling the license is most shocking and unconscionable. It represents the naked exercise of absolute power to wrongfully deprive the licensee and his hard working employees from earning a living and serving the public. The penalty of cancellation is especially abhorrent when compared with the disposition of other cases by the respondents. (See, e.g. *Matter of Playboy Club of N. Y.* v. *State Liq. Auth.*, 23 N Y 2d 544, where a 10-day suspension was imposed upon a finding that a bouncer in the Playboy Club assaulted a patron while held helpless by two others. And this assault followed on the heels of an admonition to the licensee resulting from the complaint of another hapless patron also assaulted in the Playboy Club that to use undue force was a violation. But not only does the authority's consideration given to this large and well known night spot in New York City contrast vividly with the harsh penalty imposed upon this small, unknown licensee, but the Court of Appeals, two Judges dissenting, held that there being no showing that the manager or other person in authority actually permitted the bouncer to assault the patron, reversed this Appellate Division which had affirmed the authority's action, and annulled the authority's determination with costs.) Possibly the commissioners were adversely influenced by Posnakoff's conception of business ownership, succinctly stated by him: " I believe that a business in a democratic society should be owned and controlled collectively by the people who run it. I feel for example all the people who work in my restaurant should share in that business. That is my categorical belief." Occasionally we hear that liquor licensed premises are being operated by "fronts" for gangsters and other undesirables who can not obtain licenses in their own names for obvious reasons. The Liquor Authority would serve the interests of the people much better if they devoted their efforts to ferret out and eliminate such places rather than going after law abiding, decent and hard working licensees. Persons such as Mr. Posnakoff should be encouraged and helped and not struck down.